UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KENNETH A. HURLEY,**                    Chapter 7
    Debtor                                  Case No. 03-16467-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

**ANN VICKERS,**
    Plaintiff
v.                                       Adv. P. No. 04-1438
**KENNETH A. HURLEY,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Complaint of the Plaintiff, Ann Vickers ("Vickers"), against the Defendant, Kenneth A. Hurley ("Hurley"), the Chapter 7 debtor, through which she seeks a determination that Hurley is not entitled to a discharge[1]

---

[1]Vickers also seeks a determination that the debt owed to her is excepted from discharge under 11 U.S.C. § 523(a)(4), for alleged breaches of fiduciary duties owed to her as a general partner of Hurley, Vickers & Associates. At trial, the Court deferred hearing evidence on the exception to discharge portion of the complaint until after ruling on the denial of discharge claims.

1

pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5).[2]  After requesting and receiving numerous extensions, Hurley filed an answer on December 30, 2005 in which he denied all material allegations and, in effect, asserted that Vickers had unclean hands.  The Court issued a Pre-Trial Order on January 24, 2006, but subsequently suspended discovery at Hurley's request.  The Court issued new Pre-Trial deadlines on May 24, 2006 and the

---

[2] 11 U.S.C. § 727 provides in relevant part:

(a) The court shall grant the debtor a discharge, unless--
    (1) the debtor is not an individual;
    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
        (A) property of the debtor, within one year before the date of the filing of the petition; or
        (B) property of the estate, after the date of the filing of the petition;
    (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
    (4) the debtor knowingly and fraudulently, in or in connection with the case--
        (A) made a false oath or account;
        (B) presented or used a false claim;
        (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
        (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
    (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

parties filed separate Pre-Trial Memoranda on July 31, 2006.

The Court conducted a trial on November 27, 2006 at which one witness testified and six exhibits were introduced into evidence. Among the Plaintiff's exhibits was a "Request for Admissions" to which Hurley failed to respond. (Plaintiff's Ex. 1). Hurley also did not object to their admissibility into evidence, and pursuant to Fed. R. Civ. P. 36, the Court deemed the Requests for Admissions admitted.[3]

The issues presented in this adversary proceeding are: 1) whether Hurley acted with the intent to hinder, delay or defraud his creditors by transferring property of his sole proprietorship to a limited liability company which he controlled prior to filing his petition and during the pendency of litigation against him in state court; 2) whether Hurley failed to keep and preserve his financial records; 3) whether inaccuracies and omissions on

---

[3] Fed. R. Civ. P. 36 provides in relevant part:

(a) Request for Admission. A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. . .

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney. . .

(b) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. . . .

Hurley's original schedules constitute knowing and fraudulent false oaths; and 4) whether Hurley has satisfactorily explained the loss of assets with respect to certain of his businesses. The Court now makes its findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

**II. FACTS**

Hurley is a certified public accountant licensed in the Commonwealth of Massachusetts who has, in various forms, performed management consulting and financial planning services since the early 1990s. Around 1993 or 1994, Hurley entered into a business arrangement with George Vaughn ("Vaughn") whereby they would provide corporate financial planning services with a concentration in taxes and accounting. Originally operating as a general partnership, approximately one year later they established Hurley Vaughn & Associates, P.C. ("Hurley/Vaughn"), a professional corporation in which Hurley held a fifty percent interest. In late 2000, Hurley resigned from Hurley/Vaughn, precipitating a "break up" of the business, though Hurley testified that Hurley/Vaughn continues to exist and that he still holds a fifty percent interest in the corporation.

At the time of the break up, Vickers was an employee of Hurley/Vaughn. After Hurley's resignation from Hurley/Vaughn, Vickers also left, and the two formed a general partnership known as Hurley Vickers & Associates ("Hurley/Vickers") to provide outsourcing of accounting and Chief Financial Officer services. The partnership agreement was not in writing and was based on their oral understanding. According to Hurley's

testimony at his 2004 Examination, a transcript of which was introduced into evidence, Hurley/Vickers "operated virtually," meaning that everyone associated with Hurley/Vickers worked out of their own home or their client's offices, and that the firm had no need for office equipment. (Plaintiff's Ex. 4, Day 1, p.16). While their respective roles within the company changed over time, Hurley admitted that he was primarily responsible for maintaining the books and records of Hurley/Vickers, as well as handling the accounts payable and receivable. (Plaintiff's Ex. 1, ¶ 1).

After both Hurley and Vickers left Hurley/Vaughn, Vaughn and Hurley/Vaughn brought suit against Hurley and Vickers in the Norfolk County Superior Court, C.A. No. 00-01738, alleging violations of fiduciary duties. (Plaintiff's Ex. 1, ¶ 4). Hurley testified that the allegations related to their solicitation of Hurley/Vaughn clients, the hiring of its employees, and the theft of Hurley/Vaughn funds. The Superior Court issued injunctions against both Hurley and Vickers. Hurley's recollection is that the injunctions related to the servicing of Hurley/Vaughn clients and hiring of employees. A civil contempt order was later issued by the Superior Court due to Hurley's violation of the injunctions. (Plaintiff's Ex. 1, ¶ 5).

On or about January 1, 2003, Hurley and Vickers agreed to dissolve their partnership. Hurley testified at trial that there was a general conversation regarding the winding down of the affairs of Hurley/Vickers, but beyond an exchange of information, there appears not to have been any understanding with regard to collection of the partnership's outstanding accounts receivable.

While Hurley/Vickers was winding down, Hurley continued business operations under the trade name Hurley & Associates, his "d/b/a." (Plaintiff's Ex. 1, ¶ 2). There is conflicting testimony regarding the exact nature of Hurley & Associates. During his 2004 Examination, Hurley testified that Hurley & Associates was a limited liability partnership established with a former employee of Hurley/Vickers named Debra Boyce. (Plaintiff's Ex. 4, Day 1 at 38). He also testified, inconsistently, that despite referring to it as a limited liability partnership, it was actually an oral general partnership of the same nature as Hurley/Vickers. Id. at 39. During the examination, Hurley unequivocally denied that Hurley & Associates was merely a trade name for himself. Id. At trial, however, Hurley testified that Hurley & Associates was "a sole proprietorship I used for six months." (Tr. at 49). Hurley's testimony at these various times was contradictory and incredible.

Between January 30, 2003 and February 15, 2003, Hurley opened bank accounts at Rockland Credit Union (Account No. 733036456) and Fleet Bank (Account No. 9421060512) for the benefit of Hurley & Associates.[4] (Plaintiff's Ex. 1, ¶ 6). Between December 31, 2002

---

[4] Admission No. 6 states "the Defendant opened bank accounts at Rockland Federal Credit Union . . . for the benefit of Hurley & Associates." While this statement has been deemed conclusively admitted, there is evidence to suggest that this may have been a drafting error. At his Rule 2004 Examination, Hurley testified that he deposited Hurley/Vickers accounts receivable in the Rockland account. Further, Admission No. 9 states:

> Between December 31, 2002 and July 31, 2003, after depositing payments from one or more account debtors of Hurley, Vickers & Associates, the Defendant did not make any transfer or payment to the Rockland Account to reflect the amounts paid by such account debtors on account of the receivable owed to Hurley, Vickers & Associates.

and July 31, 2003, Hurley received payments from account debtors of Hurley/Vickers and admitted that he deposited the proceeds from these accounts receivable into the Fleet account. (Plaintiff's Ex. 1, ¶ 8). Additionally, Hurley deposited an aggregate sum of $26,741.50 in the Rockland account, and issued checks from that account totaling $24,177.50. (Plaintiff's Ex. 1, ¶ 7). Two of these checks, totaling $6,100.00, were issued to Hurley personally. Id. On June 5, 2003, Hurley entered into an agreement with Lucid, Inc., ("Lucid") a former client of Hurley/Vickers, under which Hurley was to provide consulting services to Lucid for a fee of $2,500.00 per day. (Plaintiff's Ex. 1, ¶ 13). As additional compensation, Hurley also arranged for Hurley & Associates to receive 230,000 shares of stock in Lucid. (Plaintiff's Ex. 1, ¶ 14).

On or about July 1, 2003, Hurley established the Hurley Group, LLC (the "Hurley Group"), a limited liability company in which he held a ninety-seven percent interest. Contemporaneously with the establishment of the Hurley Group, Hurley transferred all of the assets of Hurley & Associates to the Hurley Group. (Plaintiff's Ex. 1, ¶ 15). With respect to this transfer, Hurley's testimony was contradictory.

At first, Hurley testified that he didn't remember specifically transferring anything, but admitted that he took clients from Hurley & Associates to the Hurley Group. At his Rule 2004 Examination, Hurley testified he effected the transfer of approximately

---

(Plaintiff's Ex. 1, ¶ 9). The import of this statement is that Hurley/Vickers funds were meant to be deposited in the Rockland account, and that Hurley's failure to do so constituted a defalcation. In any event, the Court need not reach this issue with regard to the denial of discharge claims because it is enough that Hurley, as a general partner in Hurley/Vickers, had at least a fifty percent interest in the Rockland account.

$30,000.00 worth of assets from Hurley & Associates to the Hurley Group, consisting of cash, accounts receivable, and computer equipment. (Plaintiff's Ex. 4, Day 1, p49-50). At trial, Hurley denied that $30,000.00 worth of assets had been transferred to the Hurley Group, but conceded that such assets could have been "put into that company to get it started." (Tr. at 27). Hurley testified, "When I set up the Hurley Group, LLC . . . whatever I had for assets in that d/b/a, I would have moved into the LLC . . . so I took whatever receivables and liabilities I had and put [sic] into it." (Tr. at 62). Hurley further testified that in his view, the transferred accounts were worthless because most were at-will contracts which could be cancelled. It was admitted, however, that on the date of the transfer the Hurley Group had outstanding accounts receivable from twenty-two account debtors totaling $81,265.32. (Plaintiff's Ex. 1, ¶ 16).

Vickers introduced a letter from Lucid dated November 6, 2003 acknowledging the assignment of the Hurley & Associates compensation agreement to the Hurley Group into evidence. (Plaintiff's Ex. 2). It is undisputed that a stock certificate dated August 15, 2003, lists the Hurley Group as the owner of 230,000 shares of common stock in Lucid. (Plaintiff's Ex. 1, ¶ 29). Hurley testified that he received no compensation for the transfer of assets from Hurley & Associates to the Hurley Group. (Tr. at 22).

Facing imminent foreclosure on two properties, Hurley filed a skeleton Chapter 13 petition on July 31, 2003, thirty days after the transfer of assets from Hurley & Associates to the Hurley Group. On August 15, 2003, Hurley filed Schedules A through J, the Statement of Financial Affairs, and other documents. A copy of Hurley's original petition

was introduced into evidence without objection. (Plaintiff's Ex. 3). On "Schedule B - Personal Property," Hurley listed his ninety-seven percent interest in the Hurley Group with a market value of "0.00" and a notation that it "began 6 mos. ago." Id. In response to "Question 33. Other personal property of any kind not already listed," Hurley stated, "Countersuit by Debtor against George Vaughn (former partner). Debtor believes lawsuit by Vaughn & his countersuit may end up a wash." Id. Absent from "Schedule B - Personal Property" was any reference to an interest in Hurley/Vaughn, Hurley/Vickers, or either the Rockland or Fleet accounts. Id.

On "Schedule F - Creditors Holding Unsecured Nonpriority Claims" Hurley failed to identify Vaughn or Hurley/Vaughn as creditors holding unsecured claims despite the ongoing state court litigation and subsequent civil contempt proceeding. Id. The lawsuit was, however, referenced on Hurley's "Statement of Financial Affairs." Id. Additionally, Hurley failed to identify an unsecured claim with respect to a deficiency claim brought by Vickers against Hurley under the Massachusetts version of the Uniform Partnership Act in the amount of $91,730.00.

On December 8, 2003, Vaughn and Hurley/Vaughn filed an "Objection to Confirmation of the Debtor's Chapter 13 Plan and Motion To Dismiss the Debtor's Chapter 13 Case and Related Relief." On November 12, 2003, Vickers filed a response to Vaughn's motion, and a hearing was held on November 20, 2003. In an order dated December 1, 2003, the Court found that based upon the omissions in Hurley's schedules, "the Debtor's Chapter 13 case was filed in bad faith and that the Chapter 13 plan is patently

unconfirmable as the Debtor failed to identify undisputed unsecured creditors," and that "conversion to a case under Chapter 7 is in the best interest of the Debtor's creditors."

On August 4, 2004, Vickers conducted the first examination of Hurley pursuant to Fed. R. Bankr. P. 2004. During the course of the first examination, Hurley could not state the amount of outstanding accounts receivable owed to the Hurley Group as of July 31, 2003, could not recall the amount he had received on account of Hurley/Vickers accounts, but further answered that he would provide such information to Vickers, as well as a list of payments made to the Hurley Group on account of receivables due Hurley/Vickers. (Plaintiff's Ex. 1, ¶ 23-25). On October 19, 2004, a follow up examination was conducted and Vickers requested the same information. In response to the previous inquiries, Hurley responded that he couldn't remember "off the top of his head" and that he "would have to research," but that he did have such financial records available to him. (Plaintiff's Ex. 1, ¶27-28). At trial, Vickers did not address whether or not these questions were answered or documents provided.[5]

On August 6, 2004, Hurley filed a "Motion to Amend Schedule B" which reflected his fifty percent interest in both Hurley/Vaughn and Hurley/Vickers.

### III. POSITION OF THE PARTIES

A. <u>Vickers</u>

Vickers seeks a determination that Hurley is not entitled to a discharge on four

---

[5] The Court notes that the claim under 11 U.S.C. § 727(a)(3) is absent from the Vickers' Pre-Trial Memorandum.

10

separate grounds. First, she alleges that Hurley's transfer of all the assets of Hurley & Associates to the Hurley Group thirty days prior to filing his petition while a lawsuit and civil contempt action were pending against him in the state court is evidence of an intent to hinder, delay, and defraud his creditors, warranting a denial of the discharge under 11 U.S.C. § 727(a)(2). Second, Vickers contends that Hurley's failure to timely provide documentation and information with regard to payments received on account of Hurley/Vickers accounts as requested during his Rule 2004 Examination constitutes a failure to keep and preserve financial records, justifying denial of the discharge under 11 U.S.C. § 727(a)(3). Third, Vickers argues that the numerous omissions and inaccuracies on Hurley's schedules, which were signed under the penalties of perjury, were knowing and fraudulent false oaths, so that the discharge should be denied under 11 U.S.C. § 727(a)(4). Fourth, she alleges that Hurley has failed to satisfactorily explain the deficiency of his assets to meet his liabilities, warranting the denial of discharge under 11 U.S.C. § 727(a)(5).

  B. <u>Hurley</u>

As stated above, Hurley's position with regard to the transfer of assets from Hurley & Associates to the Hurley Group is conflicting. He concedes that the assets, primarily client accounts, of Hurley & Associates were "put into" the Hurley Group to start it, but that no real transfer took place. Hurley & Associates was merely an interim vehicle to continue his consulting operations until a more permanent entity was established, and thus any transfer was done in the ordinary course of business. Additionally, he states that the Hurley Group did not receive the 230,000 share until August 15, 2003, after the bankruptcy

11

filing.  Hurley maintains that he has provided Vickers with the financial information she seeks as evidenced by a letter dated May 22, 2003, from his then attorney to then counsel for Vickers, indicating that Hurley had collected $29,240.50 on behalf of Hurley/Vickers, expended $26,662.02, and that an accounting had previously been provided.  (Defendant's Ex. 1).  With respect to the claim under 11 U.S.C. § 727(a)(4), Hurley contends that the omissions and/or inaccuracies on his schedules were the result of mere inadvertence, and not any intent to defraud his creditors.

**IV. DISCUSSION**

    A.  Section 727(a)(2)

        1.  Applicable Law

Section 727(a)(2) of the Bankruptcy Code provides in relevant part that a court shall grant the debtor a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition."  11 U.S.C. § 727(a)(2). The United States Court of Appeals for the First Circuit has previously explained that:

> [I]n order for a debtor to be denied a discharge under § 727(a)(2), an objector must show by a preponderance of the evidence that (1) the debtor transferred, removed, destroyed, mutilated, or concealed (2) his or her property (or the property of the estate if the transfer occurs post-petition) (3) within one year of the petition filing date (for prepetition transfers) (4) with intent to hinder, delay or defraud a creditor.

Watman v. Groman (In re Watman), 458 F.3d 26, 32 (1st Cir. 2006); *see also* Razzaboni v. Schifano (In re Schifano), 378 F.3d 60 (1st Cir. 2004).  Intent to defraud a creditor can be

proven by circumstantial evidence. *See* Marrama v. Citizens Bank of Massachusetts (In re Marrama), 445 F.3d 518, 522 (1st Cir. 2006) (holding the debtor transferred valuable assets with actual intent to defraud creditors). The Court of Appeals has given bankruptcy courts in this circuit guidance in weighing evidence of fraudulent intent by providing several "objective indicia," commonly referred to as the "badges of fraud," including:

> (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the [debtor] both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of the debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by the debtor to keep the transfer a secret.

Id. "The shifting of assets by the debtor to a corporation wholly controlled by him is another badge of fraud." In re Watman, 301 F.3d 3, 8 (1st Cir. 2002); *see also* Humphries v. Schnurr (In re Schnurr), 107 B.R. 124 (Bankr. W.D. Tex. 1989) (finding that the debtor's transfer of assets from a sole proprietorship to a corporation under his control was done with the primary purpose of insulating income producing assets from the creditors of the sole proprietorship).

"'Property' capable of being transferred depends on whether it is 'susceptible of having value.'" In re Watman, 301 F.3d at 12 (quoting Robinson v. Watts Detective Agency, 685 F.2d 729, 734 (1st Cir. 1982)). Once the bankruptcy court determines that the assets have some value, it does not have to calculate the precise value. In re Watman, 458 F.3d at 33.

2. Analysis

It has been conclusively established by the "Request for Admissions" that on or about July 1, 2003, Hurley transferred all the assets of Hurley & Associates to the Hurley Group. These assets included cash, accounts receivable, computer equipment, and the Lucid compensation agreement. Because Hurley and Associates is a sole proprietorship, its assets are property of the debtor, and therefore the only issue before the Court is the Hurley's intent. Applying the First Circuit precedent for objective indicia of fraud to the factual circumstances of this case, the Court finds that all elements are present.

First, the transfers were between insiders as Hurley is the sole proprietor of Hurley & Associates and the ninety-seven percent interest holder in the Hurley Group. Second, Hurley retained the benefit, use, and possession of the assets transferred from Hurley & Associates to the Hurley Group as he is in control of that entity. Third, Hurley testified that the Hurley Group paid no consideration for the transfer. Fourth, Hurley's financial situation deteriorated after transfer and he faced imminent foreclosures prompting the bankruptcy filing. Fifth, the cumulative effect of the transfer was to place assets which were Hurley's into another entity outside the reach of his creditors while Hurley was a defendant in a pending state court civil action as well as a civil contempt proceeding. Sixth, viewing the general chronology of events, the transfer occurred during pendency of two lawsuits in which judgments would potentially be obtained against Hurley, and only thirty days prior to filing his petition in which he identifies few assets. Seventh, Hurley's interest in the Hurley Group as stated on "Schedule B - Personal Property" does not reflect

that any valuable assets were transferred to the Hurley Group as its market value as of the petition date is listed as "0.00." (Plaintiff's Ex. 3). Additionally, the transfer is not identified on the "Statement of Financial Affairs." Id.

The Court finds that Hurley's testimony with regard to this transaction in both the Rule 2004 Examination and at trial was evasive, conflicting, and not credible. His assertion that the assets "put into" the Hurley Group were merely worthless client accounts and at-will contracts is incredible, particularly in light of the 230,000 shares of common stock the Hurley Group received on account of the assignment of the Lucid agreement. Hurley testified at various points in time that the approximate value of the assets in question was $30,000.00. Hurley's contention that it was merely a nominal transfer of assets from an interim entity to a permanent one done in the ordinary course of business also has no merit. In light of the civil action, the civil contempt proceeding based on his violation of the state court's injunction, and Vickers' deficiency claim against him under Massachusetts partnership law, it is inconceivable that Hurley's transfer of assets held by him personally to a limited liability company was not a strategy to insulate his assets from potential judgments.

Accordingly, the Court finds that the transfer of assets from Hurley & Associates to the Hurley Group thirty days prior to Hurley's bankruptcy filing was made with intent to hinder, delay, and defraud his creditors warranting a denial of discharge. In light of the Court's ruling on the 11 U.S.C. § 727(a)(2) claim, the Court need not address the remaining claims under 11 U.S.C. §§ 727(a)(3), (a)(4), and (a)(5).

## V.  CONCLUSION

In view of the foregoing, the Court shall enter a judgment in favor of Vickers on the Second Cause of Action in her Complaint.

By the Court,

*Joan N. Feeney*

_____
Joan N. Feeney
United States Bankruptcy Judge

Dated: May 15, 2007
cc: Kenneth A. Hurley, Richard N. Gottlieb, Esq., David B. Madoff, Esq.